**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ADRIANA AMSO,

                *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL SECURITY,

                *Defendant*.

_____/

CASE NO. 2:17-cv-11750

DISTRICT JUDGE NANCY G. EDMUNDS

MAGISTRATE JUDGE PATRICIA T. MORRIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 11, 13)**

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (Doc. 11), be **DENIED**, that the Commissioner's Motion, (Doc. 13), be **GRANTED**, and that this case be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff Adriana Amso's ("Plaintiff") claim for Disability Insurance Benefits

("DIB"). (Doc. 2). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 13).

On December 10, 2013, Plaintiff filed the instant application for DIB, alleging a disability onset date of September 20, 2013. (Tr. 158-63). The Commissioner denied her claim. (Tr. 82-96). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on November 30, 2015 before ALJ Richard L. Sasena. (Tr. 55-81). The ALJ issued a decision on February 1, 2016, finding Plaintiff not disabled. (Tr. 12-29). On April 19, 2017, the Appeals Council denied review, (Tr. 1-7), and Plaintiff filed for judicial review of that final decision on June 2, 2017. (Doc. 1).

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not

"try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and

> meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two (20 C.F.R.

404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found Plaintiff not disabled under the Act. (Tr. 37-54). At Step One, the ALJ found that Plaintiff would meet the insured-status requirements of the Act through December 31, 2018, and had not engaged in substantial gainful activity since September 20, 2013, her amended alleged onset date. (Tr. 42). At Step Two, the ALJ concluded that the following impairments qualified as severe: cervicalgia, fibromyalgia, systemic lupus erythematosus (lupus), depression, anxiety, bipolar disorder, and panic disorder. (Tr. 42-43). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (Tr. 43-44). Thereafter, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except she could

> lift and carry up to 10 pounds occasionally and lighter objects frequently, stand and/or walk for about 2 hours of an 8 hour workday, and sit for a total of at least 6 hours in an 8 hour workday; however, the claimant needs the ability to change position after 15 minutes. The claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant cannot lift overhead and she should avoid concentrated exposure to vibrating tools. The claimant is limited to simple routine repetitive tasks that require little judgment and can be learned in a short period of time. The claimant should have no interaction with the general public, but she can tolerate occasional interaction with co-workers as long as she is not on a team.

(Tr. 44-45). At Step Four, the ALJ found Plaintiff incapable of performing her past relevant work. (Tr. 48-49). Proceeding to Step Five, the ALJ also found Plaintiff capable of performing a substantial number of jobs in the national economy, and therefore not disabled under the Act. (Tr. 49-50).

### E.   Administrative Record

#### 1.   Medical Evidence

The Court has reviewed Plaintiff's medical records. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.   Administrative Hearing

##### i.   Function Report

Plaintiff filled out a Function Report, dated February 14, 2014, which appears in the administrative record. (Tr. 196-203). She described her condition as "[s]evere pain all over my body. Medications and not sleeping at night makes me tired all [the] time." (Tr. 196). "[I]t hurts to lay down, it hurts to walk, stand or even [sit]. I have memory loss and concentration [and] even driving is hard." (*Id.*). She had worse days and better days. (Tr. 197). On most days, she would shower and "make food for my kids," and she always felt better when in bed "because [of] my legs." (*Id.*). Nevertheless, "I don't sleep during the night. I am always awake because of the pain and aches." (*Id.*). She marked no trouble completing personal care activities. (*Id.*). She remained able to make sandwiches, canned or frozen foods, and "light meal[s]" when her sons help. (Tr. 198). She also continued to clean her house, do laundry, vacuum, and fold clothes, though "my sons help[] me with all

the chores." (*Id.*). "Once a week, maybe twice," she would ride in a car. (Tr. 199). She did not drive anymore because "I am tired all the time and medications make[] me drowsy, and I get lost." (Tr. 199). She shopped in stores for groceries with her sons about once per week. (*Id.*). She remained able to handle her own finances. (*Id.*). She no longer participated in her hobbies because "I am in severe pain every day, every night. I can't even walk or stand for more [than] 3-5 minutes. I am not able to function like before." (Tr. 200). In her free time, she watched "the religious channels" and talked on the phone "with my friends." (*Id.*). She went to church on Sundays and "meeting[s] on Fridays sometimes." (*Id.*). In social situations she was "sometimes . . . difficult. I don't like nobody to visit me. I don't want to visit them, nobody understand[s] my [depression] and my illness." (Tr. 201). Prompted to mark abilities with which she struggled, Plaintiff denoted: lifting, squatting, bending, standing, walking, sitting, kneeling, stair climbing, seeing, memory, completing tasks, concentration, understanding, following instructions, using hands, and getting along with others. (*Id.*). "I can't lift more than one pound, can't climb more [than] 5 stairs. I can't walk for more than 3-5 minutes without having to [sit], my legs feel[] like they're broken." (*Id.*). She could not follow instructions or conversations well. (*Id.*). Asked how well she handled authority figures, she noted "I don't have any problems with anyone." (Tr. 202). "I am very emotional, I get frustrated very easily, I feel like my illness [is going to] make my life shorter, and I am going to die before my children are grown." (*Id.*).

### ii.    Plaintiff's Testimony at the Administrative Hearings

Plaintiff opened her testimony by discussing a recent attempt to work part-time at her "old job," in which she did "front desk, office work." (Tr. 58-59). She had worked there

from 2001 to 2013 when she quit, "[a]nd this time I went back and I asked if they could help me out"; though "[t]hey did take me back for a couple of days a week," she found she "couldn't do the same job anymore. And they were going to fire me. So, I, I just left." (Tr. 59). The ALJ then asked what might keep Plaintiff from working "a real simple job now where you . . . didn't have to lift . . . more than 10 pounds, You could sit or stand as you wanted. What would keep you from doing a job like that?" (Tr. 60). She replied "I can't stand as much. I have to sit a lot." (Tr. 61).

Elaborating somewhat, she noted that "[b]ecause of the muscles in my legs" and her "different medications," she had "a lot of side effects" that would prevent her from standing much. (*Id.*). Nor could she sit for very long because "I have to move around a lot." (*Id.*). She estimated an ability to sit for about 10 minutes before needing to switch positions. (*Id.*). She also had trouble lifting things because her arums were "disabled. I'm not able to lift them all the way up, where it function with my two arms. I can't shower. I can't bring my arms over my head to wash my hair, in the shower. Or I have to put, hook my bra to the back. I can't bring my hands to the back." (Tr. 62). Asked in particular whether this had been the case for "two and a half years" as she intimated, Plaintiff said "[n]ot every time, no. There will be days that, you know, my body functions different." (*Id.*). She also indicated struggles with "putting my sweaters or my jacket on," "brushing my hair or blow drying my hair," and cooking, although "[s]ometimes . . . I'll make breakfast." (Tr. 67).

Speaking to the side effects of her medications, Plaintiff noted they made her "drowsy, sleepy, nauseated." (Tr. 66). They caused her to nap 2 to 3 hours each day. (*Id.*). Due in part to these side effects, and an incident in which she was pulled over by a police

officer, her sons took her car away and her license was suspended. (Tr. 68). Nevertheless, "I drove" to the hearing. (Tr. 69). She attended physical therapy for exercise, where "they do . . . a lot of water and the massage. And then the machine for my muscles and my . . . bones." (Tr. 70). She could think of no hobbies, social activities, or friends. (*Id.*).

In 2001, Plaintiff's husband perished in a car accident, and 8 years later when she remarried, "he was very abusive." (Tr. 71). "We divorced after 10 months, because he was abusing to me and the boys." (*Id.*). She entered another relationship following the divorce, but it ended because "he wanted me to stop taking my medications. And I . . . did get pregnant. And I terminated the pregnancy. And then because I stopped all the medication, my depression got really bad." (*Id.*). "I tried to kill myself," and wound up in a hospital "in Warren." (Tr. 72). "I was there for a week and a half. Because I left the hospital and they didn't put me on my medications right away, because it was the weekend. So, I had another episode. And then I tried to, like, kill myself again. So, they took me to the psych, to the psych unit in Pontiac, I think. That was the second time. The first time was after the divorce." (Tr. 73).

### ii.     The VE's Testimony at the Administrative Hearings

The ALJ posed his first hypothetical question to the VE:

> Let me ask you some hypothetical questions about an individual this claimant's age, education, and work experience. And if such an individual was limited to light work. Occasional climbing, balance, and stooping, no crouching or crawling. Should not do any overhead lifting. Limited to simple, routine, repetitive tasks that require low judgment during a short period of time, with no interaction with the general public and occasional interaction with coworkers. Can be approximate, but not as a team member. With those limitations would that . . . eliminate the past relevant work?

(Tr. 76). The VE indicated that such an individual could not perform Plaintiff's past work, but could perform other jobs in the national economy, including: "laundry worker" (with 4,000 regional jobs and 184,000 national jobs), "cleaner/housekeepers" (with 21,000 regional jobs and 101,000 national jobs), and "hand packagers" (with 2,300 regional jobs and 46,000 national jobs). (Tr. 76-77).

In his second hypothetical, the ALJ asked about a person with "those same limitations, but the exertional level is reduced to sedentary. Also, should avoid concentrated exposure to vibrating tools. Would that affect the last answer?" (Tr. 77). The VE indicated it would not, but listed several sedentary jobs such an individual could perform: "ticket sorters or checkers" (with 500 regional jobs and 18,000 national jobs), and "[d]ocument preparation clerks" (with 1,500 regional jobs and 37,000 national jobs). (Tr. 77-78). An additional limitation requiring such an individual to change positions every 15 minutes would not alter these numbers.

### F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).   Both    "acceptable"

and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions

entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996).

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR

96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)     [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)     Treatment, other than medication, . . . received for relief of . . . pain;
(vi)    Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.    Analysis

Plaintiff raises five arguments in her Motion: (1) under 20 C.F.R. § 404.1512(e), the ALJ was obligated to re-contact examining or treating physicians because the evidence was consistent yet the ALJ remained unsure of whether a disability existed, (Doc. 11 at ID 485-87); (2) in rendering his credibility analysis, the ALJ should not have considered Plaintiff's part-time 2015 work as "proof that [her] activity level is greater than alleged," and further contravened SSR 96-7p, 1996 WL 374186 (July 2, 1996), in weighing Plaintiff's course of treatment against her, (*Id.* at ID 487-89); (3) the ALJ improperly granted short shrift to the opinion of consultative examiner Dr. Forman, (*Id.* at ID 490-91); (4) the ALJ should have granted more weight to opinions from treating sources Dr. Ghani, Dr. Mallah, Dr. Hadla, and P.A. St. Marie, (*Id.* at ID 491-94); and (5) despite medical records confirming the "cocktail of medications" Plaintiff relied on and the "[s]ide effects common among these medications," the ALJ nevertheless "failed to thoroughly acknowledge" the impact such side effects would have on her RFC. (*Id.* at ID 494-95). I address each argument in turn.

### 1.    Failure To Re-Contact Treating Sources

Plaintiff first argues the ALJ erred in not re-contacting her treating medical provider. In her view, 20 C.F.R. § 404.1512(e) and § 404.1527(c)(3) "require the ALJ to recontact examining or treating physicians for clarification" where "the evidence is consistent but . . . not sufficient to decide whether" disability exists, or "the ALJ is not able to reach a conclusion about whether the claimant is disabled." (Doc. 11 at ID 485-86).

Plaintiff's argument cannot prevail. As the Commissioner notes, Plaintiff cites a version of § 404.1512(e) no longer in effect when the ALJ rendered his decision. The

version applies to opinions rendered before March 28, 2016, and the provision now addressing the decision to re-contact a medical source is 20 C.F.R. § 404.1520b(c)(1), which contains permissive language. *Accord, e.g.*, *McClaine v. Comm'r of Soc. Sec.*, No. 2:16-CV-13950, 2018 WL 1309877, at *7 (E.D. Mich. Jan. 29, 2018), *R. & R. adopted,* No. 16-13950, 2018 WL 1291126 (E.D. Mich. Mar. 13, 2018); *McBride v. Comm'r of Soc. Sec.*, No. 1:16-CV-708, 2017 WL 3393948, at *12 n.4 (S.D. Ohio Aug. 7, 2017), *R. & R. adopted, McBride v. Comm'r of Soc. Sec.*, No. 16-13950, 2018 WL 1291126 (E.D. Mich. Mar. 13, 2018); *Spuhler v. Comm'r of Soc. Sec.*, No. 16-12171, 2017 WL 3187620, at *2 (E.D. Mich. July 27, 2017). *See generally* 20 C.F.R. § 404.1520b(c)(1) (effective Mar. 26, 2012 to Mar. 26, 2017) ("We *may* recontact your treating [medical source]." (emphasis added)). Likewise, Plaintiff inaccurately summarizes the content of § 404.1527(c)(3), as it does not "require the ALJ to recontact examining or treating physicians for clarification or for additional information when the evidence is consistent but is not sufficient to decide whether the claimant is disabled, or if after weighing the evidence, the ALJ is not able to reach a conclusion about whether the claimant is disabled." (Doc. 11 at ID 485-86). *See generally* 20 C.F.R. § 404.1527(c)(3).

Accordingly, the ALJ had no duty to re-contact Plaintiff's examining or treating sources. But even if these regulations applied as Plaintiff wishes, the ALJ would not have failed in his duty because the evidence on record was not equivocal, ambiguous, or incomplete. *E.g.*, *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) ("The ALJ has discretion to determine whether additional evidence is necessary"); *Burnett v. Comm'r of Soc. Sec.*, No. 10-CV-14739, 2012 WL 3870362, at *5 (E.D. Mich. Sept. 6,

2012) ("Rejecting the limitations as inconsistent with objective evidence amounts to a decision on the merits of the claim; it does not imply a circumstance that triggers the ALJ's duty to recontact the treating sources."). And as I discuss in the following sections, substantial evidence underlies the ALJ's findings.

### 2.    Compliance with SSR 96-7p and Consideration of Plaintiff's Part-Time Work

Plaintiff next attacks the ALJ's credibility determination on two grounds: On the one hand, she avers the ALJ improperly weighed "gaps in medical treatment" before seeking out "the reasoning for such inaction," especially in light of Plaintiff's "well-documented history of mental illness." (Doc. 11 at ID 489). On the other hand, she suggests the ALJ should not have weighed Plaintiff's short-lived return to part-time work against her credibility because it "actually shows [her] inability to work on a regular and continuous basis." (*Id.* at ID 487).

I first address Plaintiff's suggestion that the ALJ improperly construed her course of treatment. Indeed, SSR 96-7p commands the ALJ not to "draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." 1996 WL 374186, at *7 (July 2, 1996). Absent sufficient explanation, an ALJ may consider a sparse course of treatment against a claimant. *See McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990).

17

At the outset, Plaintiff's suggestion that certain gaps "are misleading because the medical records are incomplete due to an oversight by Plaintiff's prior representative," (Doc. 11 at ID 489), is not helpful to her case. I simply note that Plaintiff fails to proffer missing records for consideration now or articulate exactly how they might have changed the ALJ's calculus. In any case, an attorney's mistake does not excuse a claimant's failure to meet her burden to prove her residual functional capacity. *See Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008) ("Absent . . . special circumstances—which do not exist in this case—this court repeatedly affirms that the claimant bears the ultimate burden of proving disability."); *cf. Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (finding that a plaintiff seeking a remand under Sentence Six of 42 U.S.C. § 405(g) could not establish "good cause" for failure to supply evidence where her attorney mistakenly failed to develop the record).

In the instant case, the ALJ does draw an inference adverse to Plaintiff in noting that her "course of treatment does not suggest further limitation." (Tr. 48). Prior to submitting her Motion for Summary Judgment, however, Plaintiff had not attempted to explain these gaps in treatment. *Cf. Bloe v. Comm'r of Soc. Sec.*, No. 09-12945, 2011 WL 1233566, at *8 (E.D. Mich. Mar. 4, 2011) ("Plaintiff did not suggest that she was unable to seek treatment. Rather, she indicated that she simply did not like the first psychiatrist that she saw. She did not follow through with much of the recommended mental health treatment and does not offer any reason she did not or could not do so. . . . [P]laintiff offers no basis for the undersigned to overturn the ALJ's credibility findings, which are supported by substantial record evidence."), *R. & R. adopted,* No. 09-12945, 2011 WL 1188721 (E.D.

Mich. Mar. 30, 2011). More importantly, the ALJ's decision makes plain that he considered possible explanations for the gaps in Plaintiff's treatment and found them wanting. Contrary to Plaintiff's newfound suggestion that the ALJ failed to account for the likelihood that her mental health interfered with her motivation to seek treatment, the ALJ discussed her mental-health records throughout his opinion and noted—at the juncture in question, no less—that her "mental status examinations are often." (*Id.*); *e.g.*, (Tr. 43-47) (discussing Plaintiff's testimony as to her mental condition, social activities, and other activities of daily living, among other evidence relating to these matters); (Tr. 315, 317, 320, 322, 324, 329, 340, 348, 402, 409, 425) (normal or cooperative/friendly attitude); (Tr. 281-82, 315, 317, 320, 322, 324, 329, 340, 348, 402, 409, 425) (fair judgment); (Tr. 308, 311, 315, 320, 322, 324, 425) (adequate grooming/hygiene); (Tr. 311, 317, 320, 322, 324, 340) (good eye contact). Although Plaintiff said she relied on family members for transportation, the ALJ observed that she "drove to the hearing." (Tr. 45). Moreover, the medical record contains multitudinous instances of Plaintiff seeking medical treatment, none of which offer any clear indication that Plaintiff had struggled to do so, and several of which suggest Plaintiff exaggerated her symptoms. *E.g.*, (Tr. 253, 263) (rating her pain at a 10/10 yet appearing to be in no acute distress). In other words, the ALJ was entitled to weigh Plaintiff's gaps in treatment against her credibility.

Plaintiff also overstates the significance of the ALJ's reliance on her prior part-time work in considering her credibility. As the Commissioner notes, he used it as one factor among many in rendering his credibility analysis, including: her conservative and sporadic course of treatment, her history of noncompliance with medication, the absence of a

19

"definitive diagnosis" of lupus and fibromyalgia, her social activities, and her ability to establish relationships with others. (Tr. 48) The record corroborates these reasons, and the ALJ did not err in finding that Plaintiff's brief foray into part-time work may "suggest that the [her] activity level is greater than she has generally alleged," (*Id.*), particularly where, as here, Plaintiff resigned and contemporaneous treatment records suggested her condition was improving, (Tr. 58, 424-27); *see* , *see also, e.g.*, (Tr. 200-02) (describing regular attendance at church and meetings, weekly phone conversations, and an ability to get along with others despite sometimes being "difficult"); (Tr. 425) ("Pt. has history of not taking meds . . . ."). The ALJ's credibility finding—already entitled to considerable deference, *see, e.g.*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) ("[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weigtth and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.")—is therefore supported by substantial evidence.

For these reasons, the Court should reject Plaintiff's argument on this ground.

### 3. Consideration of Dr. Forman's Opinion

Plaintiff supposes the opinion of consultative examiner Dr. Forman deserved greater weight than the ALJ accorded it. "The Administration routinely relies upon and highly regards these 'one-time' examinations that are based on subjective complaints. These exams should not be conveniently disregarded when they are consistent with a Plaintiff's allegations of disability." (Doc. 11 at ID 491).

Her argument proves unavailing. The ALJ explicitly discussed Dr. Forman's opinion and the GAF score assigned therein. (Tr. 46). He assigned the opinion little weight

because it included a diagnosis of a learning disorder or cognitive function—a condition Plaintiff admits is not corroborated elsewhere in the record—and found Plaintiff incapable of handling her own finances—a finding with which Plaintiff disagrees. (*Id.*); *see* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion"); *id.* § 404.1527(c)(4) ("[T]he more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *see also* (Doc. 11 at ID 491) (conceding there is "no prior evidence of a learning disability"); (Tr. 199) (claiming an ability to pay bills, count change, handle a savings account, and use a checkbook/money orders). The ALJ also noted that Dr. Forman's opinion was based on a single evaluation in which he appeared to rely "heavily" on Plaintiff's "subjective complaints," which (for reasons addressed above) the ALJ found generally incredible. (Tr. 46); *see* 20 C.F.R. § 404.1527(c)(2)(i) ("[T]he longer a . . . source has treated you and the more times you have been seen by a . . . source, the more weight we will give to the source's medical opinion."); *Remias v. Comm'r of Soc. Sec.*, 690 F. App'x 356, 357 (6th Cir. 2017) (finding reasonable the ALJ's decision to discount a medical opinion grounded on incredible subjective statements).[1] These constitute valid reasons to discount an opinion from a one-time examiner such as Dr. Forman.

---

[1] I also note that GAF scores are a disfavored evidentiary source in the Sixth Circuit, and as such are not entitled to any particular weight or consideration. *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007) (noting that "the Commissioner 'has declined to endorse the [GAF] score for "use in the Social Security and SSI disability programs,"'" and observing that such scores "are not raw medical data and do not necessarily [illuminate] symptoms of mental functioning." (quoting *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411 (6th Cir. 2006))).

In sum, substantial evidence endorses the ALJ's weight-assignment to Dr. Forman, and remand on this ground is not warranted.

### 4. Weight Accorded Treating Sources

Plaintiff next contends that she had treating sources, and the ALJ neglected to adequately grapple with their findings. She notes that the "medical evidence demonstrates frequent and numerous doctor visits to Dr. Ghani, [Dr.] Mallah, P.A.-St. Marie and Dr. Hadla," all of which document "the diagnoses and symptomology expressed by Plaintiff." (Doc. 11 at ID 492-93). "At the very least, [these opinions] should not have been ignored." (*Id.* at ID 493). Instead, "the ALJ picks and chooses from the medical records, picks and chooses from the reports, and does not fully address the opinions that he is reviewing in direct violation of the rules requiring the ALJ to give great weight to the opinion of the treating physician." (*Id.*).

Evaluating medical source statements requires considering factors such as the nature of the source's examining relationship with the client, 20 C.F.R. § 416.1527(c)(1), the source's treatment relationship with the client, *id.* § (c)(2), the supportability of the source's opinion, *id.* § (c)(3), the consistency of the opinion with the record as a whole, *id.* § (c)(4), whether the source is a specialist opining on areas within her specialty, *id.* § (c)(5), as well as "any factors" the claimant or others "bring to [the Commissioner's] attention, or of which [the Commissioner] is aware, which tend to support or contradict the opinion," *id* § (c)(6). The ALJ "will always give good reasons. . . for the weight" given a "*treating* source's opinion." *Id* § (c)(2) (emphasis added). The ALJ, however, need not give 'good reasons' with respect to 'other sources'—rather, he "generally should explain the weight

given to opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006). There remains an important "distinction between what an adjudicator must consider and what the adjudicator must explain." *Id.*

At the outset, I note that P.A. St. Marie was not a treating source, but an "other source," and the ALJ discussed the records she produced extensively. (Tr. 46-47). She did not render an opinion on Plaintiff's residual functional capacity that appears in the record. The ALJ was not required to weigh an opinion that did not exist.

Likewise, Plaintiff points to no medical opinion in the record from other alleged treating sources, and my review of the transcript did not reveal any such opinion. *See* 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."); *cf. Ackermann-Papp v. Comm'r of Soc. Sec.*, No. 1:06-CV-832, 2008 WL 314682, at *2 (W.D. Mich. Feb. 4, 2008) ("[N]o treating source actually rendered a 'medical opinion'—properly understood—about [claimant's] ability to perform basic work activities during the relevant period, as a Global Assessment of Functioning ('GAF') score alone does not constitute a medical opinion."). As with P.A. St. Marie, however, the ALJ summarized and considered

23

the medical evidence from Dr. Ghani, Dr. Malah, and Dr. Hadlah at numerous points in his decision. *See generally* (Tr. 45-47).

Plaintiff's challenge therefore amounts to a cherry-picking argument, and the problem with such an argument "is that it cuts both ways. She too cherry picks data." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 285 (6th Cir. 2009). Here, however, the ALJ marshaled a considerable amount of evidence in crafting his RFC, and the record corroborates his findings. (Tr. 45-47) (observing that Plaintiff often presented with a normal or cooperative and friendly attitude, adequate grooming and hygiene, fair judgment, and good eye contact); (*Id.*) (discussing records which showed Plaintiff ambulatory, in no acute distress, and with intact muscle strength); *e.g.*, (Tr. 315, 317, 320, 322, 324, 329, 340, 348, 402, 409, 425) (normal or cooperative/friendly attitude); (Tr. 281-82, 315, 317, 320, 322, 324, 329, 340, 348, 402, 409, 425) (fair judgment); (Tr. 308, 311, 315, 320, 322, 324, 425) (adequate grooming/hygiene); (Tr. 311, 317, 320, 322, 324, 340) (good eye contact); (Tr. 359, 362, 366, 401) (normal strength and sensation); (Tr. 248, 253, 263, 265, 329, 331, 340, 348, 402, 404, 409) (in no acute distress); (Tr. 299-300) (ambulatory); *see also* (Tr. 399-401, 408-09) (denying pain and/or normal range of motion); (Tr. 366, 377) (objective findings implying mild severity); (Tr. 322, 405, 407) (medication causing no negative side effects). In addition, the ALJ relied somewhat on the State agency medical opinions of Dr.

Choi and Dr. Kaul, who each predicted limitations consistent with those in the ALJ's RFC. (Tr. 48); *see* (Tr. 82-95).[2]

Put simply, substantial evidence underlies the ALJ's rationale and Plaintiff's cherry-picking argument cannot prevail. *Accord White*, 572 F.3d at 284 ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.").

### 5.    Failure To Address Medication Side Effects

In making her final argument, Plaintiff correctly observes that "[s]ide effects of medications are . . . relevant in determining a [claimant's] RFC," and must be considered by the ALJ. (Doc. 11 at ID 494).  "Absent a full exploration of" issues such as "'the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment.' . . . the record is incomplete." (*Id.* at ID 494) (quoting SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)).

The ALJ considered records pertinent to Plaintiff's medication and their side effects, and explicitly discussed her numerous changes in medication and history of noncompliance therewith.  (Tr. 46-47). Per Plaintiff's admission, the ALJ also considered and discussed Plaintiff's testimony as to her "complaints of sleeplessness, nausea and fatigue caused by these medications." (Doc. 11 at ID 495) (citing (Tr. 46)). Therefore, the notion that the ALJ did not "specifically address [Plaintiff's] side effects and the medication she utilized for

---

[2] Because Plaintiff does not challenge the ALJ's reliance on these opinions, she has waived any objection to it. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (undeveloped arguments are waived).

pain relief" is ludicrous. *Id.*; *cf. Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."). Of note, the records before the ALJ contain scant trace of Plaintiff suffering negative side effects from her medication, aside from one occasion in which she experienced nausea and vomiting after taking pills on an empty stomach. (Tr. 399); *see also* (Tr. 322, 405, 407) (suggesting medication was effective and without notable side effects). What remaining evidence for such side effects there is comes from Plaintiff's testimony, which (as noted above) was rightfully found less than credible. Indeed, the only other record evidence Plaintiff musters in her brief comes from evidence submitted *after* the ALJ issued his decision. *See* (Doc. 11 at ID 495) (citing (Tr. 23-24)).

### H.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, (Doc. 11), be **DENIED**, that the Commissioner's Motion, (Doc. 13), be **GRANTED**, and that this case be **AFFIRMED**.

### III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States*

*v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  May 1, 2018                         S/ PATRICIA T. MORRIS
                                           Patricia T. Morris
                                           United States Magistrate Judge


**CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: May 1, 2018                          By s/Kristen Castaneda
                                           Case Manager